WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evonne Jones, | No. CV-22-00313-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Evonne Jones's appeal from the Social Security Commissioner's denial of disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 1). The appeal is fully briefed. (Docs. 20; 23; 27). The Court now rules.

**I.   BACKGROUND**

Plaintiff filed an application for DI benefits in December of 2018, alleging an onset date of February 15, 2018, and claiming lower back pain, neck pain, psoriatic arthritis, radiculopathy, and numbness and tingling in her legs and arms. (Docs. 12-7 at 2; 12-5 at 3). Plaintiff's application was denied at the initial stage, upon reconsideration, and by an administrative law judge ("ALJ") after a hearing. (Docs. 12-3 at 24; 12-5 at 17, 41). The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 12-3 at 2).

Plaintiff then timely filed this action seeking review of the Commissioner's final decision under 42 U.S.C § 405(g).[1]

### a. The Disability Determination Process

To be eligible for Social Security DI benefits, a claimant must, among other requirements, show that she is "under a disability" which existed while she was "insured for" such benefits. 42 U.S.C. § 423(a)(1). A "disability" is in an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The SSA has created a five-step process for an ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one the claimant is not disabled if she is doing substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At step two the claimant is not disabled if she does not have a "severe impairment," i.e., "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). At step three the claimant is disabled (and entitled to benefits) if her impairment "meets the duration requirement" and "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii).

If not, the ALJ will determine the claimant's "residual functional capacity" ("RFC") by considering "all the relevant evidence" including impairments, "any related symptoms," and resulting "physical and mental limitations" to determine "the most [the claimant] can still do despite [her] limitations." *Compare id.* § 404.1520(a)(4), *with id.* § 404.1545(a)(1). At step four the claimant is not disabled if, considering the RFC and the physical and mental demands of the claimant's past relevant work, she can still perform such work. *Id.* § 404.1520(a)(4)(iv), (f). If the claimant cannot perform (or does not have) past work, at step five the claimant is not disabled if, considering her RFC, "age, education, and work

---

[1] *Compare* 42 U.S.C. § 405(g) (requiring appeals to be filed within 60 days of receipt of notice of a final decision), *and* 20 C.F.R. § 422.210(c) (presuming receipt to be five days after the date of the notice), *and* (Doc. 12-3 at 6) (SSA Appeals Council Denial dated December 22, 2021), *with* (Doc. 1) (complaint filed 65 days later on February 25, 2022).

experience," she can adjust to other work that exists "in significant numbers in the national economy." *Compare id.* § 404.1520(a)(4)(v), (g)(1), *with id.* § 404.1560(c). But if the ALJ finds the claimant cannot adjust to other work, she is disabled. *See id.* § 404.1520(a)(4)(v).

### b. The ALJ's Findings

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Doc. 12-3 at 16). At step two the ALJ found that Plaintiff's psoriatic arthritis, sacroiliac joint dysfunction, lumbar spondylosis, lumbar radiculitis, and cervical spondylosis were severe impairments. (*Id.* at 16–18). But at step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 18).

The ALJ then found that Plaintiff had the RFC to perform sedentary work with limitations. (*Id.* at 17). The ALJ found Plaintiff was limited to: occasionally lifting and carrying ten pounds and frequently lifting and carrying less than ten pounds; standing or walking for two hours and sitting for six hours in an eight-hour day; occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; frequently balancing; occasionally reaching overhead; no concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and poor ventilation; and no exposure to dangerous machinery and unprotected heights.

At step four the ALJ found that, considering her RFC, Plaintiff was unable to perform her past relevant work as a medical assistant, teacher assistant, and childcare leader. (*Id.* at 22). At step five the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy, based on a vocational expert's ("VE") testimony that a person of Plaintiff's age, education, work experience, and RFC could perform the work of a document preparer, production worker, or table worker. (*Id.* at 23). As a result, the ALJ found Plaintiff not disabled. (*Id.* at 22–23).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

"Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). But the ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). But by the same token the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### III. ANALYSIS

Plaintiff argues that the ALJ erred both in assessing several medical opinions and in partly discrediting Plaintiff's subjective symptom testimony. Defendant argues that the ALJ gave legally sufficient reasons supported by substantial evidence for each determination. The Court will consider each issue in turn.

**a. Medical Opinion**

For applications (like Plaintiff's) filed on or after March 27, 2017, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In providing this explanation, the ALJ must articulate how she considered the supportability of that medical opinion and its consistency with other evidence in the record. *See id.* (citing 20 C.F.R. § 404.1520c(b)(2)); 20 C.F.R. § 416.920(b)(2), (c)(1)–(2)).

### i. Dr. Shehadeh

Plaintiff argues that the ALJ failed to give legally sufficient reasons to reject the opinion of Plaintiff's rheumatologist, Dr. Shehadeh. (Doc. 13 at 8–10; Doc. 15 at 3–5). Defendant argues that the ALJ did give legally sufficient reasons and that Plaintiff's arguments are merely a competing interpretation of the evidence. (Doc. 14 at 7–9).

Dr. Shehadeh opined that Plaintiff: could sit for one hour and stand for less than one hour within an eight-hour workday; could not stoop; needed a cane for sustained ambulation; would need to lie down for 15 minutes every half hour; could occasionally lift up to ten pounds and carry up to five pounds; was effectively precluded from reaching, handling, and fingering bilaterally; and was likely to be absent from work more than three days per month. (Doc. 12-24 at 26–29).

The ALJ found Dr. Shehadeh's opinion unpersuasive because it was inconsistent with and unsupported by the medical evidence. (Doc. 12-3 at 21). The ALJ implied that the following medical evidence was inconsistent with and did not support Dr. Shehadeh's opinion:

> In August 2018, the claimant had status post epidural steroid injections, radiofrequency ablation and a stimulator. She had minimal symptoms with a back brace (Exhibit 2F/13). In September 2018, the claimant reported she had not improved. However, neurological examinations only showed mild weakness of the legs, distal more than proximal. Her spinal cord stimulator was adjusted and reprogrammed (Exhibit 4F/9). The claimant had cervical spondylosis and cervical radiculopathy (Exhibit 3F/30). Although the claimant had pain, the claimant's range of motion was normal (Exhibits 2F/11; 10F/4). Additionally, the claimant's gait and balance was normal (Exhibit 11F/10).

(*Id.*).

Substantial evidence supports the ALJ's inconsistency finding. The cited finding of "minimal symptoms with a back brace" during an August 2018 examination, (*see* Doc. 12-10 at 14), is inconsistent with Dr. Shehadeh's opinion that Plaintiff could not stoop, needed to frequently take breaks and change position, and would miss work more than three days per month. Plaintiff argues that the results of prior and subsequent examinations conflict with this finding, but it is the ALJ's responsibility to resolve conflicts and ambiguities in

1    the record. *Andrews*, 53 F.3d at 1039–40 (citation omitted). The ALJ's determination that
2    Plaintiff had minimal symptoms with a back brace was reasonable, and the Court defers to
3    it.
4        Additionally, the objective findings that Plaintiff had normal range of motion,
5    normal balance, normal gait, and only mild weakness in the legs are inconsistent with Dr.
6    Shehadeh's opinions that Plaintiff could not stoop and needed a cane for sustained
7    ambulation.
8        Plaintiff argues that one of the cited examinations is irrelevant to whether Plaintiff
9    had normal range of motion in her spine because the examination only evaluated the
10   elbows, hips, feet, AC,[2] and SC joints.[3] (Doc. 13 at 9 (citing Doc. 12-10 at 12)). But the
11   ALJ also cited findings from an examination by PA Erica Neal which found normal range
12   of motion (albeit with pain in some areas) for the cervical spine, shoulders, elbow, wrist,
13   hand, dorsolumbar spine, hips, knees, and ankles. (Doc. 12-3 at 21 (citing Doc. 12-16 at
14   59); *see* Doc. 12-16 at 58–60). That examination also found that Plaintiff could stoop
15   without difficulty and did not need an assistive device (such as a cane) to walk. (Doc. 12-
16   16 at 58–59). The ALJ found PA Neal's opinion generally persuasive because it was
17   supported by her own findings and largely consistent with the medical evidence, (Doc. 12-
18   3 at 21), and Plaintiff does not challenge that finding on appeal, (*see* Docs. 13; 15). The
19   ALJ's citation to PA Neal's findings constitutes substantial evidence supporting the ALJ's
20   rejection of Dr. Shehadeh's opinion. *Cf. Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
21   1989) ("To the extent that the nontreating physician's opinion rests on objective clinical
22   tests, it must be viewed as substantial evidence.") (cleaned up).[4]
23       Plaintiff also argues that the ALJ's determination that Plaintiff had normal gait was
24   not reasonable because the cited August 2019 examination noting normal gate was

---

[2] The AC joint is in the shoulder. *See Acromioclavicular joint*, Stedman's Medical Dictionary 462930, Westlaw (database updated November 2014).
[3] The SC joint is between the clavicle, sternum, and cartilage of the first rib. *See Sternoclavicular joint*, Stedman's Medical Dictionary 464420, Westlaw (database updated November 2014).
[4] Plaintiff does not specifically challenge the ALJ's rejection of Dr. Shehadeh's opinion regarding reaching, handling, and fingering, which was also supported by PA Neal's examination and opinion. (*Compare* Doc. 12-3 at 18, *with* Doc. 12-16 at 59, 62).

- 6 -

performed at an appointment which was primarily for treatment of an ingrown toenail, and because a physical therapy appointment around the same time noted that Plaintiff had fallen at the end of July 2019. (Doc. 13 at 10). But it is the ALJ's role to resolve conflicts in the evidence, and the ALJ's determination was reasonable. Moreover, this Court's review of the record identified four clinical findings of normal balance and one of impaired balance. (Docs. 12-10 at 12, 19–20; 12–16 at 58–59, 74, 89). Similarly, this review located 20 findings of normal gait and 22 findings of abnormal gait. (Docs. 12-4 at 5, 11, 23, 29, 34, 41, 48, 55, 61; 12-9 at 12; 12-10 at 12, 19–20; 12-11 at 36, 43, 52, 60; 12-12 at 35, 54, 61, 68, 75, 82; 12–13 at 13, 30, 56, 68, 90; 12-14 at 17; 12-15 at 42, 56, 67, 111, 179; 12-16 at 7, 15, 34, 44, 51, 58–59, 74, 89; 12-17 at 130). The ALJ's determination cannot therefore be said to have been achieved by isolating a specific quantum of evidence.

The Court finds that the ALJ's explanation for rejecting Dr. Shehadeh's opinion was legally sufficient and supported by substantial evidence.

    **ii. Dr. Hutchinson**

Plaintiff argues that the ALJ erred in finding persuasive the opinion of Dr. Hutchinson (the state agency consultant at reconsideration) but failing to incorporate into the RFC Dr. Hutchinson's opinion that Plaintiff required a cane. (Doc. 13 at 6–7 (citing Doc. 12-5 at 36)). Defendant argues that "any error is harmless because Dr. Hutchinson relied on evidence the ALJ had already considered during her review of the record when she made the determination that the cane was not necessary." (Doc. 14 at 9–10).

At reconsideration, Dr. Hutchinson opined in part that a "medically required hand-held assistive device [was] necessary for ambulation," and explained that Plaintiff needed a "single point cane for prolonged ambulation, flares of pain or irregular terrain." (Doc. 12-5 at 36). The ALJ found Dr. Hutchinson's opinion persuasive because it was "consistent with or supported by the medical evidence." But the ALJ did not include the need for a cane in her RFC or in her questions to the VE. (*See* Doc. 12-3 at 18; Doc. 12-4 at 129–130).

1 An ALJ is required to incorporate into the RFC all accepted medical findings
2 regarding a Plaintiff's limitations. *Van Sickle v. Astrue*, 385 Fed. App'x 739, 741 n.1 (9th
3 Cir. 2010) (citing *Magallanes*, 881 F.2d at 756). But an ALJ's decision should be affirmed
4 even in the presence of legal error "where that error is harmless, meaning that it is
5 inconsequential to the ultimate nondisability determination, or that, despite the legal error,
6 the agency's path may reasonably be discerned, even if the agency explains its decision
7 with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)
8 (cleaned up).

9 Assuming that the ALJ erred in failing to explain why she did not include the need
10 for a cane in her RFC, the Court nonetheless concludes that any such error was harmless
11 because the path of the ALJ's reasoning is readily discernible. Before discussing Dr.
12 Hutchinson's testimony, the ALJ had already considered and rejected Dr. Shehadeh's
13 opinion that Plaintiff required a cane, reasonably finding it inconsistent with medical
14 evidence in the record. (*See* Doc. 12-3 at 20–22). The ALJ had also already considered and
15 found persuasive PA Neal's opinion, noting particularly that Plaintiff "did not use assistive
16 devices" at PA Neal's examination. (*Id.* at 21). The ALJ had therefore already stated legally
17 sufficient reasons supported by substantial evidence for rejecting Plaintiff's need for a
18 cane. That she did not explicitly reiterate these reasons in discussing Dr. Hutchinson's
19 opinion was harmless error.

20 **iii. Dr. Porter**

21 Plaintiff argues that the ALJ erred in entirely failing to discuss the opinion of
22 Plaintiff's neurosurgeon, Dr. Porter. (Docs. 13 at 11; 15 at 5–6). Defendant argues that any
23 error is harmless because Dr. Porter only assessed temporary restrictions, some of which
24 were not required for the jobs the VE identified. (Doc. 14 at 11).

25 The Court finds the ALJ erred in failing to discuss Dr. Porter's opinion. An ALJ is
26 required to explain "how persuasive [she] find[s] all of the medical opinions" in the record.
27 20 C.F.R. § 404.1520c(b). "A medical opinion is a statement from a medical source about
28 . . . whether" a claimant has "impairment-related limitations or restrictions." *Id.* §

404.1513(a)(2). And a medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." *Id.* § 404.1502(d). Dr. Porter is a medical source because he is a licensed and practicing physician. (*See id.*). And Dr. Porter's note is a medical opinion because it indicates that, for a period of six weeks, Plaintiff was unable to engage in any "heavy lifting," or "repeated bending, twisting, [and] tilting," and could not work for more than 5 hours in a day. (Doc. 12-11 at 11). Thus, the ALJ erred in failing to discuss the opinion.

Where an ALJ fails to discuss a medical opinion, the Court "cannot consider [the] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

The six-week period covered by Dr. Porter's opinion extended to March 5, 2018, several weeks after Plaintiff's alleged onset date of February 15. But because of the six-week limitation, the opinion was inherently temporary, and "[o]pinions regarding temporary disability . . . are not a basis for concluding a claimant is disabled." *Flores v. Berryhill*, 2018 WL 1317827, at *4 (W.D. Wash. Mar. 14, 2018) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also* 42 U.S.C. § 423(d)(1) ("The term "disability means . . . inability to engage in any substantial gainful activity by reason of any medically determinable . . . impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . .").

Additionally, considering the record as a whole the Court concludes that no reasonable ALJ could find Plaintiff disabled based on Dr. Porter's opinion because it is not probative of Plaintiff's RFC for any period that meets the duration requirement for disability. Dr. Porter issued his opinion in January of 2018 after Plaintiff fell and fractured screws in her lower back. *Compare* (Doc. 12-15 at 136) (noting Plaintiff fell on December 28, 2017), *and* (Doc. 12-9 at 147) (CT test finds fractured screws in early January 2018), *with* (Doc. 12-11 at 11) (Dr. Porter's note, effective January 22, 2018). At the end of April

2018, Dr. Porter recommended a surgery to fix the fractures, which was successfully performed on May 24, 2018. (Doc. 12-9 at 11, 13, 35). An x-ray that July found that the surgical hardware was stable and intact following the surgery, (Doc. 12-9 at 118), and an exam on the first of August found minimal symptoms with a back brace, (Doc. 12-10 at 14).

Thus, even under the broadest possible interpretation, Dr. Porter's opinion has no relevance beyond the seven-month period between Plaintiff's fall and her recovery from surgery. It therefore cannot show that Plaintiff was disabled after that period or during any twelve-month period. The ALJ's failure to discuss Dr. Porter's opinion was harmless error.

### b. Subjective Symptom Testimony

Plaintiff also argues that the ALJ failed to adequately support her decision to discount Plaintiff's testimony regarding the severity of her symptoms. To discredit subjective symptom testimony an ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036–37 (9th Cir. 2007) (cleaned up). Once a Plaintiff satisfies this test, provided there is "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, and did not make a finding that she was malingering. (Doc. 12-3 at 19–20). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "inconsistent" with "the medical and other evidence in the record" because "the evidence does not support them." *See id.* Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). The "clear and convincing" requirement is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff testified at the hearing that, due to back issues, she experienced constant pain which radiated down her legs. (Doc. 12-4 at 117). She said that pain in her ankles sometimes prevented her from walking without a cane or walker, and that pain in her wrists sometimes prevented her even from using a walker. (*Id.*). She said that she had "drop foot" (difficulty lifting the front parts of the foot causing the toes to drag on the ground during walking)[5] due to her spinal issues, which caused her to fall as many as four or five times per month. (*Id.* at 120). She testified that, due to this pain, she was "not functional at all" eight days out of ten, could not get out of bed most mornings, was often forced to cancel planned activities, and would only be able to work two days per week on average. (*Id.* at 116, 122, 125). She also said that she could not stand or sit for more than 30 minutes at a time, and had to frequently switch positions and take numerous breaks. (*Id.* at 111, 124–125). Additionally, she said that psoriatic arthritis made it difficult to clutch her fingers and impossible to hold a writing instrument, and that herniated discs in her neck caused her hands to go numb if she reached too far. (*Id.* at 123–24).

The ALJ did not fully credit the Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" because the ALJ found that they were inconsistent with the evidence in the record. (Doc. 12-3 at 20). The ALJ first noted that Plaintiff was "not in acute distress" and was "well nourished and well-developed," both of which are generally inconsistent with allegations of chronic pain.[6] This is a clear and

---

[5] *Footdrop*, Stedman's Medical Dictionary 345170, Westlaw (database updated November 2014).

[6] *See De Mello v. Kijakazi*, 2022 WL 17583054, at *1 (9th Cir. 2022); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (stating that being "well-developed," "well nourished," and "in no acute distress" is "not the sort of description . . . one would expect" of a plaintiff who "was totally disabled.") Plaintiff cites *Ekola v. Colvin*, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014) for the proposition that a lack of acute pain on examination is not inconsistent with claimed chronic pain. (Doc. 13 at 12–13). But given that the Ninth Circuit

- 11 -

convincing reason for partly rejecting Plaintiff's statements regarding the extent and disabling effects of her pain, and particularly her testimony that she cannot get out of bed most mornings and was totally non-functional 80 percent of the time. *Cf. Refugia D. v. Berryhill*, 2018 WL 4043203 (C.D. Cal. Aug. 22, 2018) (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)) (noting that lack of muscle atrophy can be inconsistent with chronic disabling pain).

The ALJ also noted that medical treatment for Plaintiff's psoriatic arthritis had helped her joints and skin. (Doc. 12-3 at 20 (citing Doc. 12-13 at 39)). This tends to undercut Plaintiff's testimony regarding her wrist and finger pain. *See Gutierrez v. Berryhill*, 2017 WL 4075133 (C.D. Cal. Sept. 13, 2017) (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ noted that Plaintiff's symptoms were minimal with a back brace, which is inconsistent with Plaintiff's testimony that she needed to frequently switch positions and take frequent breaks. The ALJ also noted that Plaintiff had normal gait and balance, normal range of motion, and only mild weakness in the legs. This evidence is inconsistent with Plaintiff's testimony that she cannot walk without a cane or walker and has drop foot.

The Court therefore concludes that the ALJ gave clear and convincing reasons supported by substantial evidence for her partial negative credibility determination. The balance of Plaintiff's arguments regarding the ALJ's evaluation of Plaintiff's subjective symptom testimony are merely alternative interpretations of the record. (*See* Doc. 13 at 13–14). The ALJ's interpretation was reasonable, and this Court must defer to it.

### IV. CONCLUSION

For the foregoing reasons,

---

has indicated that a lack of acute distress can be inconsistent with chronic pain, this argument is unavailing.

1    **IT IS ORDERED** that the Commissioner's decision is affirmed, and the Clerk of
2 the Court shall enter judgment accordingly.[7]
3    Dated this 10th day of July, 2023.

> James A. Teilborg
> Senior United States District Judge

---

[7] To the extent a mandate is required, the judgment shall serve as the mandate.

- 13 -